BILLY McGOWAN, *et al.*, v. THE NORTHWESTERN LEGION OF HONOR, Appellant.

**Benevolent Insurance:** FORFEITURE: *Waiver.* The by-laws of a mutual benefit association provided that "each member shall pay the amount due on the notice of the collector, within thirty days from the date of such notice," and on failure to pay shall stand suspended. A member failed to pay such assessment within thirty days from its date; but, after the expiration of that time notices of another assessment were sent to said member, requesting him to pay the therein mentioned assessments, due from him, to maintain his standing in the order, and reciting that, "to avoid suspension, this notice must be paid on or before" a certain date, and that, "the sending of this notice shall not be held to waive forfeiture or lapse of membership by non-payment of previous assessments." Within thirty days after the date of the last notice said member died, and tender of the amount due on such assessments was made within that time. *Held,* in an action on the certificate of membership, that the sending of said notices extended the time of payment of the overdue assessments.

KINNE, J., concurring specially.

*Appeal from Cedar Rapids Superior Court.*—HON. T. M. GIBERSON, Judge.

TUESDAY, MAY 12, 1896.

THE plaintiffs are the beneficiaries named in a certificate issued by the defendant corporation to John McGowan for the sum of two thousand dollars. The defendant corporation includes in its organization a grand council and subordinate councils; and Cedar Rapids Council, No. 11, is of the latter, and John McGowan was in his lifetime a member thereof. The certificate held by him as such member issued June 30, 1890. McGowan died November 13, 1893, and this suit is to recover the amount named in the certificate.

The defendant, for the payment of its obligations, maintains a benefit fund, by an assessment on its membership, through the agency of its subordinate councils.  Its laws provide for the suspension of subordinate councils, and also for the suspension of members, for the failure to pay assessments to the subordinate councils, by which means they are enabled to pay the grand council, having charge of the benefit fund.  The members are required to pay assessments on notice, and the following is a section of the laws of the corporation in regard thereto: "Sec. 75.  Assessment Notice by Collector.  The subordinate council having been notified by the grand secretary that an assessment has been levied, it shall be the duty of the collector to at once notify every member liable to an assessment.  This assessment notice shall be in accordance with a form prescribed by the grand council, and its date shall be the same as that of the notice received from the grand secretary. Each member shall pay the amount due on the notice of the collector, within thirty days from the date of such notice, and any member failing to pay such assessment within thirty days shall stand suspended from the order and all benefits therefrom.  The collector shall immediately notify the commander and secretary of the date of such suspension, and the commander shall announce the suspension, and the date thereof, at the next session of the council, for the information of the membership only."   The defendant resists the payment of the certificate in suit because of a failure of McGowan to pay assessment No. 63, notice of which was dated September 1, 1893, and hence should have been paid on or before October 1, 1893.  It was not so paid, and for that reason, by the operation of the laws of the order, McGowan was a suspended member from that date, unless, because of matters pleaded in avoidance, the law,

as to him, was not operative. The following is the fourth division of the reply: "For further reply, plaintiffs say that on the second day of October, 1893, defendant's grand secretary notified the deceased, John McGowan, in print and writing, mailed to him as required by defendant's laws, of assessment No. 64 against him; amounting to one dollar and eighty cents, and requiring payment thereof on or before November 2, 1893, and that on November 1, 1893, the defendant's grand secretary further, by notice in print and in writing, mailed to him, as required by defendant's laws, notified the deceased, John McGowan, of assessment No. 65 against him, amounting to one dollar and eighty cents, and requiring payment thereof on or before December 1, 1893, and that defendant thus and thereby elected to treat the said John McGowan as a member of its order in good standing, and subject to assessment, up to the time of his death, and thus and thereby waived the alleged non-payment of the alleged assessment No. 63, mentioned in defendant's answer. Copies of such notices of said assessments, Nos. 64 and 65, are hereunto annexed, marked 'Exhibits 1 and 2,' and made a part hereof." It is alleged in the next division of the reply, that amounts specified in the alleged notices were paid to the person named therein on the thirteenth day of November, 1893, and a receipt taken therefor. These facts are pleaded as a waiver of the rule for suspension. Other issues are in the pleadings. At the conclusion of the evidence, the plaintiffs moved the court to direct a verdict for them, which it did, and overruled a motion for defendant for judgment in its favor. The defendant appealed.—*Affirmed.*

*Hedges & Rumple* for appellant.

*Chas. A. Clark* for appellees.

Granger, J.—Some facts disclosed by the record, which are without dispute, should be stated at the outset. The assessments numbered 63, 64 and 65, were mailed to, and received by John McGowan. No payment, nor offer of payment, was made on any of them until November 13, 1893. On that day, one Holmes went to the person designated in the assessment notices (W.A. McConkie), and paid the amount of the three assessments (63, 64 and 65), and took a receipt therefor, as received from John McGowan. What was said at the time of the payment is stated by McConkie, in his testimony, as follows; "Q. Please state the conversation between you and Mr. Holmes at that time, in regard to this mattter of the payment of the money? A. He said Mr. McGowan had died this afternoon, and on looking over his receipts he had found he had been back two assessments, and he come to see if he could pay them. I told him I didn't believe the company would receive the money, but, if he desired, I would send it in. I had sent in all the previous assessments on Saturday, but he wanted me to send in his assessment; and I told him I would do so, and if they didn't accept it, they would, undoubtedly, send it back to him. He was to pay the expense of transmission. That was the agreement, and that was carried out. I also told him I would write a letter to Mr. Rowland, stating the case to him." It then appears that McConkie forwarded the money to the grand secretary, with information that McGowan died that afternoon; and the money was promptly returned, with the words that, if alive and well, he would have to pass an examination before he could be reinstated. With our view of the case, the last two assessment notices are of vital importance, and we set out the important part of the last one; the other being the same, except it was dated October 1, and payment was to be made by November 2, 1893. It is as follows: "Assessment

No. 65. Death No. 74. To Avoid Suspension, this Assessment Must be Paid on or before Dec. 1, 1893. Northwestern Legion of Honor, Marengo, Iowa, Nov. 1, 1893. Companion J. McGowan: You are hereby notified of the death of the following named companion, who was entitled to all the benefits of the order. Proof of death has been duly approved by the proper authorities. * * * The condition of the grand treasury requires that an assessment be called at this time. Assessment No. 65, amounting to $1.80, is now due from you; and, to maintain your standing in the order, such assessment should be paid on or before Dec. 1, 1893. You are authorized to make payments to your secretary, Companion McConkie, who will deliver to you the grand secretary's receipt upon payment. Should you remit direct to grand secretary, pay exchange. The sending of this notice shall not be held to waive forfeiture or lapse of membership by the non-payment of previous assessments. Fraternally, D. M. Rowland, Grand Secretary." We will set at rest many questions argued, if we here say that our consideration of the case will be on the assumption that the defenses pleaded are conclusive against a recovery, except for the legal effect of the last two notices of assessment.

It is the law of the order that a member not in good standing is not entitled to share in the benefit fund, and one suspended is not in good standing. It is an express provision of the law, which is a part of the contract fixing the conditions of membership, that, if assessments are not paid within thirty days after the notice thereof, the member stands suspended. This condition is fixed by the section of the law quoted in our statement of facts. Hence, McGowan, after October 1, 1893, was a suspended member, unless the notices had the effect to relieve him therefrom. McGowan's relation to the order on and after October

2, 1893, was known. On the first of October, and again on the first of November, a notice issued to him directly from the secretary of the grand council. What recognition the notices extend is best known by the contents. The first language of the one set out is that of caution "to avoid suspension" by paying the assessment then being made, "on or before December 1, 1893." It then notifies him of the death of a companion, and then requires him to make payment of the assessment *due* from him, in order to maintain his standing in the order, and names the persons to whom payment can be made. The law above quoted requires that when a member is suspended, the collector shall immediately notify the commander and secretary of the suspension, and the commander shall announce the suspension, and the date thereof, at the next session of the council, for the information of the members. The collector of the council is to notify the grand secretary of all suspensions. Assuming that the method of procedure as to the notices is authorized by the laws of the order, we do not see any other conclusion, except that McGowan, after the receipt of the last notice, was entitled to make payment in accordance with its terms. For what other purpose did it issue? On the day that McGowan would have stood suspended, he was notified of an assessment to be paid by November 2, and before that date he was notified to pay another before December 2, and all for the purpose of maintaining his standing in the order. It seems to us the notice gave him the legal right to make the payment within the time. The last clause of the notice is as follows: "The sending of this notice shall not be held to waive forfeiture or lapse of membership by nonpayment of previous assessments." This language indicates an understanding that the notice was being sent to a person liable to forfeiture or a lapse of

membership; and the query arises, why send them to such a person, if he was already to be treated as a suspended member? It will be seen that the clause does not provide against waiver if payment shall be made. We take it to be a mere provision against waiver if the notice is not complied with, for surely the notice is sent to induce compliance. Without the last clause of the notice, the rule we indicate is hardly open to question. It issued to a person known to be under suspension by the letter of the law, and, in unmistakable terms, recognized him as under obligations for the payment of assessments made after the date of the suspension, and warned him that, to *avoid suspension, this assessment must be paid on or before December 1, 1893.* The natural understanding from the notice would be that he was not, by the order, regarded as suspended. It is not to be correctly said that the language of the last clause - rendered the notice of no force in a case where there was a previous lapse of membership, by the letter of the law; for, if that construction obtains, there could have been no purpose in sending the notices, unless it was to improperly obtain the money, and that is neither claimed nor thought. There is some controversy over the fact of whether McGowan died before or after the payment on November 13. It is clear that the death and payment were near the same time, and, as we view the record, the presumption would be that it was paid before, in the absence of evidence to show the contrary. But, in any event, if the time of payment was extended to December 2, 1892, the death would not defeat a right of recovery, if payment was made within the time. The judgment is AFFIRMED.

KINNE, J.—I concur in the judgment of the affirmance, but place my judgment upon grounds not discussed in the opinion. I am not willing to assent

to the views of the opinion, as I do not think a proper construction is therein given to the provisions of the assessment notice.