**JONES v. TRAVELERS PROTECTIVE ASS'N OF AMERICA.**

No. 3920.

District Court, S. D. Florida, Jacksonville Division.

Aug. 19, 1936.

W. McL. Christie, of Jacksonville, Fla., for plaintiff.

Marks, Marks, Holt, Gray & Yates, of Jacksonville, Fla., for defendant.

STRUM, District Judge.

Defendant Travelers Protective Association issued to Cornelius Frazier Jones a certificate of membership and insurance in said association, by which the defendant promised to pay insured's beneficiary the sum of $5,000 in event of the death of the insured exclusively from bodily injuries sustained through external, violent, and accidental means. Insured died on June 17, 1933, from injuries thus sustained on June 15, 1933. Defendant denies liability, and insured's beneficiary sues to recover on the policy.

The policy and by-laws of the defendant require the insured to pay semiannual dues in amount of $7.50, and such special assessments as might be properly levied. The by-laws of the defendant (article 9, § 4) further provide: "Any member failing to pay the assessment levied as aforesaid within the time herein provided shall cease to be a member of this Association in good standing and he and his beneficiary shall cease to be entitled to any benefit or benefits under his certificate of membership. Should a member default in the payment of any assessment levied hereunder and within thirty days after such default make payment as herein directed of the assessment levied, his membership shall be restored to good standing, but neither the member nor his beneficiary shall be entitled to any benefit or benefits should the member be injured fatally or otherwise during the period the member is in default of the payment of any assessment levied under this section."

Insured had paid his semiannual dues to and including June 30, 1933. In April, 1933, a special assessment was levied payable on or before May 15, 1933, which insured had not paid at the time of his death.

On June 1, 1933, however, the defendant mailed, and on June 5, 1933, the insured received, a notice captioned: "Special Assessment $2.00; Semi-Annual Dues $7.50; Special Notice; Due and payable on or before June 30, 1933. $9.50 will put you in good standing to December 31, 1933." The body of the notice states: "Above you will find a Special Notice for Assessment and Semi-Annual Dues. At the time this was mailed we had not received your remittance for the Special Assessment of $2.00 due on May 15th. It will be necessary therefore, that you add this amount to your remittance for the Semi-Annual Dues, otherwise your State Secretary cannot issue you a receipt for the Semi-Annual Dues. We are pleased to say that a very small percentage neglected to remit for the Special Assessment and *you are given this opportunity of paying it at this time with the Semi-Annual Dues.*" (Italics supplied.)

Defendant contends that the policy went into default May 16, 1933, and remained so

1078

because the assessment was not paid prior to insured's injury. Plaintiff contends that the default was waived by the extension of time for payment, and that defendant is estopped to assert it.

■ Where the conduct of an insurance company has been misleading, the ordinary principles of election, estoppel, and waiver apply to preclude the company setting up a forfeiture. In New York Life Ins. Co. v. Eggleston, 96 U.S. 572, 577, 24 L.Ed. 841, 843, it is said: "Forfeitures are not favored in the law; and * * * courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract." The doctrine was originally adopted in Knickerbocker L. Insurance Company v. Norton, 96 U.S. 234, 24 L.Ed. 689, and was approved in Phœnix Mut. L. Insurance Company v. Doster, 106 U.S. 30, 37, 1 S. Ct. 18, 27 L.Ed. 65, and numerous subsequent cases.

■ It cannot be disputed that the effect of the notice of June 1st was to grant the insured the privilege of paying the assessment on or before June 30, 1933. The notice issued to a member known by the company to be in default by the strict letter of its by-laws, but in unmistakable terms it solicited payment of the past-due assessment on or before June 30, 1933, telling insured that he was given the opportunity to pay it up to that time, and that such payment would put him in good standing for six months thereafter. Why issue such a notice, unless to abrogate the existing default as of June 1, 1933, the date of the notice? The notice states that it will be necessary that the insured add the amount of the special assessment to the semiannual dues, due June 30, 1933, "otherwise your State Secretary cannot issue you a receipt for the semi-annual dues." The natural understanding of this language is that, if the special assessment is paid with the semi-annual dues on or before June 30, 1933, insured would not be regarded as in default,

and the secretary would issue a receipt showing the policy in full force.

Defendant's offer contained in this notice was, not that it would "restore" the policy effective upon payment of the assessment if before June 30, 1933, thus treating the policy as in default until actual payment of the assessment, but its notice simply stated that "payment of $9.50 will put you in good standing until December 31, 1933," and further "you are given this opportunity of paying it (the assessment) with the semi-annual dues," which were due on June 30, 1933. Upon receipt of the notice, the insured became entitled to rely on the extension so granted and to pay according to the terms of the notice. For what other purpose did the notice issue? The extension still had 15 days to run when insured was fatally injured on June 15, 1933.

Until the extension was granted, insured was undoubtedly in default from May 16, 1933. But when on June 1, 1933, he was notified that he was given the opportunity of paying on or before June 30, 1933, such action of the company was contrary to and inconsistent with an intention on its part to claim a forfeiture during the extension thus granted. Extension of the time for payment until June 30, 1933, was necessarily an acknowledgment by the defendant that the insured was still entitled to the benefits of the policy until that time. The defendant will not be heard to affirmatively grant the insured an extension of time within which to pay, and then claim he is in default during the extension. The extension had not expired when the insured was injured. By granting the extension of time, defendant elected to treat the policy sued on as a valid and subsisting obligation until expiration of the extension, and waived the default theretofore existing, having knowledge of all the facts. Murray v. Home B. L. Ass'n, 90 Cal. 402, 27 P. 309, 25 Am.St.Rep. 133; Knickerbocker L. Insurance Company v. Norton, 96 U.S. 234, 24 L.Ed. 689; McGowan v. Northwestern Legion of Honor, 98 Iowa, 118, 67 N.W. 89; Modern Woodmen v. Tevis (C.C.A.) 111 F. 113; Grand Lodge v. Lachmann, 199 Ill. 140, 64 N.E. 1022; Farmers Mutual Life Protective Ass'n v. Elliott, 4 Ga.App. 342, 61 S.E. 493; 45 C.J. 107, 159, et seq.; Decennial Digests, Insurance, ☞755.

If insured had sustained injuries between May 16 and June 1, 1933, when the policy

was in default, a materially different question would be presented. But such is not the case. On June 1, 1933, when the extension was granted, insured was in good health. It was after defendant had extended the time of payment, and before expiration of the extension, that insured was fatally injured.

In Hope v. Travelers' Protective Ass'n, 130 S.C. 381, 126 S.E. 45, and Red Cloud Tribe v. Wilson, 164 Va. 178, 178 S.E. 685, and other cases relied upon by defendant, there had been no affirmative extension of time for payment. There was a simple failure of the insured to pay his dues, and his injury occurred while he was in default. Here there was an affirmative extension of time within which the insured was granted the privilege to pay, and within which extension insured received his injuries. Other cases relied on by defendant involve instances in which a notice merely requesting payment of dues was sent out subsequent to default, and not as here, an affirmative extension of time within which to pay.

Plaintiff's replications asserting waiver and estoppel based upon the notice of June 1st are good, and defendant's demurrer thereto is overruled.