# Richmond

RED CLOUD TRIBE, NUMBER 58, IMPROVED ORDER OF RED
MEN, ETC. V. BERTHA M. WILSON.

March 14, 1935.

Present, All the Justices.

The opinion states the case.

*W. E. Hogg* and *Allan D. Jones,* for the plaintiff in error.

*Channing M. Hall* and *M. I. Armistead,* for the defendant in error.

EPES, J., delivered the opinion of the court.

This is an action (instituted by notice of motion for judgment) brought by Bertha M. Wilson against Red Cloud Tribe, Number 58, Improved Order of Red Men of Messick, York county, Virginia. The parties are referred to as they appeared in the court below.

The plaintiff is the widow of Howard Wilson who, at the time of his death and for several years prior to that time, was a member of the defendant association.

The defendant (to which we shall hereafter refer as the Tribe), a fraternal benefit society, is an unincorporated association,[1] which is a subordinate lodge of the "Great Council of Virginia of the Improved Order of Red Men," a Virginia corporation, which, as stated in its constitution, "exists by virtue of a charter granted it by the Great Council of the United States of the Improved Order of Red Men." One of the objects of this order and this Tribe is to afford limited insurance benefits payable by the tribe to its members.

The purpose of the action is to recover from the defendant a sum arrived at by multiplying $2 by the number of members of the defendant order in good standing at the time of the death of Howard Wilson, to which the plaintiff claims to be entitled under the benefit provisions of section 5, article VI, of the by-laws of the defendant.

By agreement a trial by jury was waived and all questions of fact and law were submitted to the decision of the court. Being of opinion that the plaintiff was entitled to recover and that at the time of Howard Wilson's death the defendant

---

[1] Section 6058, Code Va. 1919.

had 414 members in good standing, the court entered judgment for the plaintiff for $828, with interest from October 10, 1932. To this judgment the defendant has been granted a writ of error.

The first assignment of error is that the court erred in holding that, upon the facts proven, the plaintiff was entitled under the by-laws of the order to recover.

There is no material conflict in the evidence, and the important facts are as follows: On August 27, 1932, Howard Wilson, the husband of the plaintiff, was injured in an automobile accident. After being in a hospital for two weeks he was taken to his home in York county, where he died on September 24, 1932, as the direct result of his injuries.

At the time he was injured he was indebted to the Tribe in the sum of $2.10 for dues and assessments for the three months ending June 30, 1932. On September 23, 1932, his stepmother, Mrs. Alice Wilson, paid for him to E. L. Forrest, the regular collector for the Tribe (called "Collector of Wampum") $2.10 in full settlement of Wilson's dues and assessments for the three months ending June 30, 1932, and $1.80 for his dues and assessments for the three months ending September 30, 1932. For these payments official receipts of the Tribe were given. Wilson died the following day (September 24th) about 8:30 p. m.

When these payments were made Wilson believed he was going to get well, as did his wife and his stepmother; and when Forrest received these payments he knew that Wilson was sick as a result of injuries received in this accident.

The Tribe held a meeting every Saturday night. During the early part of the regular meeting held September 24, 1932, someone came in and said that Howard Wilson was dead. Shortly after this Forrest stated to the meeting that Wilson's dues had been paid; and at the close of the meeting he reported the total dues collected by him since the last meeting, which included the amounts paid by Wilson, and the whole amount reported by him was accepted by the meeting.

No action was taken to return Wilson's dues until at the

meeting of the Tribe held on November 19, 1932 (the eighth after Wilson's death). At this meeting a motion was made and carried to "refund Mr. Howard Wilson's dues for quarters June and September, to be paid to Mrs. Alice Wilson." In accordance with this resolution a check was sent to Mrs. Wilson for the $3.90 which she had paid for Howard Wilson. She endorsed the check and turned it over to Mrs. Bertha Wilson (the plaintiff), who promptly returned the check to the Tribe.

No claim was made by Howard Wilson during his lifetime or is here being made for sick benefits. The Tribe has not paid and no claim is here being made for the $40 which section 4 of article VI of the by-laws of the Tribe provides shall be paid to help defray the funeral expenses of a member who dies while in good standing.

The Tribe issues no policy of insurance and the pertinent by-laws of the Tribe constitute the contract of insurance between the Tribe and its members. It is also pertinent to note that the insurance benefits are not payable by the superior or grand lodge but are payable by the local tribe.

"General laws and rules of order for the government of tribes under its jurisdiction" were adopted and promulgated in January, 1923, by the "Great Council of Virginia of the Improved Order of Red Men." These laws we shall hereafter refer to as "General Laws for Tribes."

Section 134 of "General Laws for Tribes" provides that "the Tribe shall adopt by-laws in accordance with these laws." The "by-laws" adopted by the Red Cloud Tribe bear unmistakable internal evidence of having been adopted in pursuance of the grand lodge's "General Laws for Tribes," and by section 7 of article XV of the Tribe's by-laws sections 53-58 of the "General Laws for Tribes" are by reference incorporated verbatim in the Tribe's by-laws. In a similar manner many other sections of the "General Laws for Tribes" are incorporated by reference in the by-laws of the Tribe. It is plain that the by-laws of the Tribe were intended to be and must be interpreted in the light of the provisions of the "General Laws for Tribes," the pertinent sec-

tions of which are quoted in the footnote.[2] In quoting sections of the "General Laws for Tribes" and of the by-laws of the Tribe we insert in brackets the interpretation given some of the order's idioms in the glossary printed as an appendix to the "Constitution and General Laws."

The pertinent sections of the "By-laws of Red Cloud Tribe, No. 58," read:

[2] Pertinent sections of "General Laws for Tribes." (Italics ours.)

"Sec. 41. A member shall be considered *in good standing and entitled to benefits*, provided he has received the chief's degree, and is not indebted to his Tribe for dues, fines, or assessments in a sum equal to three moons' [months] dues.

"Provided, a Tribe may adopt a by-law restricting the payment of benefits until a member shall have been in the Order for a stated time, not exceeding 12 moons.

"(a) To be entitled to receive the U. P. W. [universal pass word] all dues shall be paid to the beginning of the six moon term for which such U. P. W. is to be promulgated."

(NOTE.—The General Laws of the Great Council provide for the promulgation of a universal pass word semi-annually at the beginning and middle of each calendar year.)

"Sec. 43. All wampum [money] of the Tribe are trust funds of the Order, created for the advancement and best interest thereof as a whole, and shall never be expended for any other object or purpose than the following, to-wit:

"(a) The necessary expenses of the Tribe economically administered, and as determined by the Legislative and Judicial Department of the Order.

"(b) *The payment of per capita tax, orphans' fund tax, sick and funeral benefits and for charitable purposes.*

"(c) The purchase of real and personal property for Tribal use, or as investment, if permissible by law.

"(d) To loaning of same at interest, provided that no loan shall be made to any member of the Tribe making the loan.

"(e) For social purposes not to exceed ten per centum of the total income of the Tribe."

"Sec. 49. Every member of a Tribe shall pay into the wampum belt [treasury] thereof, as dues, not less than one fathom [$1] for every three moons, or four fathoms per great sun [year], which shall be due and payable at the last stated councils in worm [March], hot [June], corn [September], and hunting [December] moons."

"Sec. 52. *Assessments may be made upon members for payment of sick or funeral benefits and orphan tax only.*"

"Sec. 57. A member of the Tribe who shall become in arrears for dues for three moons, *thereby forfeits all right to benefits, and shall stand suspended from all benefits of whatsoever kind during the continuance of any sickness that may intervene while such member is in arrears, and for two seven suns after the arrearage shall have been paid in full; nor shall funeral benefits be paid where a member dies while in arrears for dues;* provided, every brother shall be required to settle his accounts in full at the expiration of every quar-

"Article V.—Dues, Fines and Assessments

"Section 1.—Every member of this Tribe shall be required to pay into the wampum belt of this Tribe as dues from the time of adoption, re-instatement or admittance to membership herein one fathom, and fifty inches ($1.50) as quarterly dues, the same with all fines and assessments to be paid on or before the last council sleep in March, June,

ter, or the first council sleep [meeting] thereafter, whether the items thereof be for dues, fines or taxes. *And until his account is so settled he shall not be entitled to the pecuniary benefits of the Tribe for fourteen suns after such arrearages shall have been paid. And a brother who shall be taken sick during said fourteen suns shall not be entitled to said benefits during such sickness.*"

. "Sec. 59. *Payment of arrearages for dues made during the sickness or disability of a member shall not entitle him to benefits during such sickness or disability.*"

"Sec. 82. Every beneficial member of a Tribe, not indebted to his Tribe in a sum equal to three moons' dues, and who shall be disabled by sickness or injury to his person from following the hunt [attending to usual business] (provided such sickness or injury shall not have been occasioned by his own improper conduct) and who is a chiefs' degree member thereof, shall be entitled to receive from the funds of the Tribe not less than one fathom [$1] of wampum per seven suns during the entire time of such inability to follow the hunt, which amount, when allowed by the Tribe, shall be paid each seven suns to such member under the direction of the Sachem. The provisions of this section shall not prevent Tribes from allowing such greater sums as their by-laws may prescribe; provided, that a Tribe may designate by its by-laws the length of time such greater sums than one fathom as benefits shall be paid. (Provided, further, that no benefits may be paid for the first seven suns' illness or disability) and Tribes may limit the number of weeks in a great sun in which benefits may be paid in any continuous illness or disability. * * *"

"Sec. 85. Each Tribe may pay to its chiefs' degree beneficial members *a funeral benefit* of at least twenty fathoms, or its equivalent, upon the death of such members, or any one thereof, entitled thereto at the time of his death. Such payment shall go towards defraying the funeral expenses of the deceased, and the Tribe shall not be released therefrom by reason of suicide or other violent cause of death."

(Note the use here of the singular "a funeral benefit.")

"Sec. 86. *When a greater amount is provided by the by-laws of a Tribe for sick or funeral benefits, such excess may be disbursed as the by-laws may direct.*"

"Sec. 88. Tribes may enact laws to pay beneficial members on the death of a wife, an allowance to aid in defraying her funeral expenses."

"Sec. 96. For a deceased member who was, while living, entitled to benefits, a sum, not less than twenty fathoms shall be appropriated from the wampum of the Tribe to defray his funeral expenses, which

September and December, or within one council sleep thereafter.[3]

"Sec. 2.—On the death of a member in good standing; two fathoms ($2) shall be paid by each member of this tribe to sustain the funds of this tribe.

## "ARTICLE VI.—BENEFITS

"Section 1.—Every member of this tribe, as required by the Constitution and By-Laws, shall not receive any benefits for the first seven suns' sickness or disability, but shall receive three fathoms ($3) for each seven suns' sickness or disability thereafter, for thirteen seven suns."

"Sec. 4.—In case of the death of a member in good standing; forty ($40) fathoms shall be immediately paid over to his widow or nearest heir to help defray his funeral expenses, said amount to be appropriated from the wampum of this Tribe.

"Sec. 5.—On the death of a member in good standing: Two ($2) fathoms for each member of this tribe in good standing on the records of this Tribe shall be paid over to his widow or in event that he is unmarried the same to be paid over to his nearest heir or heirs, unless otherwise di-

---

shall immediately be paid over to some person authorized to receive the same. If there is not sufficient wampum in the belt of the Tribe to pay the funeral benefits of a deceased member, the Tribe shall make an assessment upon each member not exceeding one fathom in any given case, and all such assessments shall be charged to the account of the members of the Tribe. Should the deceased member leave no relative or friend authorized to receive said amount the Sachem shall take charge of the funeral, pay the expenses thereof from such appropriation, and make report of his action to the Tribe. The Tribe shall not be relieved therefrom by reason of suicide or other violent cause of death. *Provided that each Tribe may provide in its by-laws for a larger amount to be paid as funeral benefits and restrict its use.*

"Sec. 97. A member not in arrears becoming ill or disabled shall not become delinquent during such illness or disability, or be deprived of his benefits; and the relief chiefs are required to pay his dues from any benefits allowed by the Tribe."

(Sections 106-122 make provision for the establishment of a fund known as the "Orphans' Fund" for the education of orphans of deceased members.)

[3] Before the first meeting in the next month.

rected by a valid will; then it must be paid to his executor or administrator legally qualified to receive the same; the same to be paid the first council fire kindled in the next quarter after said brother's death.

"Sec. 6.—In case of the death of the wife of a brother in good standing; forty ($40) fathoms shall be allowed the brother to help defray her funeral expenses; said amount to be appropriated from the funds of this Tribe, and in addition each member shall be assessed fifty (50c) inches; same to be paid into the wampum belt of this tribe; and, from the wampum belt paid over to the brother within sixty days after the death of the brother's wife.

"Sec. 7.—A brother who has deposited his card in this Tribe if worthy and qualified according to the laws of this Tribe, shall not be entitled to benefits until one moon thereafter.

"Sec. 8.—A member in good standing, becoming sick or disabled, shall not become in arrears during said sickness or disability or deprived of his benefits; the relief chiefs are required to pay his dues from any benefits allowed him by this Tribe.

"ARTICLE XV.—DISQUALIFICATIONS

\*    \*    \*    \*    \*    \*    \*    \*

"Sec. 2.—Every member of this Tribe shall be required to settle his full account in full, on or before the next seated council after the last stated council in worm, hot, corn and hunting moons; whether the items thereof be for dues, fines or assessments; and until his account is so settled he shall not be entitled to any benefits of this Tribe until fourteen suns after such arrearages have been paid; and any such member taken sick or disabled during that period shall not be entitled to any benefits *during such sickness or disability.*

"Sec. 3.—*A member in arrears and disqualified from receiving the benefits of this Tribe at the time he is taken sick or disabled may pay up his indebtedness; but such payment*

*does not entitle him to benefits during such sickness or disability; and a member in arrears when taken sick or disabled cannot by paying in full be entitled to funeral benefits in case of death.*

"Sec. 6.—A member who is more than three moons in arrears to this Tribe for dues, etc., shall not hold any chieftaincy or vote on any question in this Tribe until all such arrearages have been paid in full.

"Sec. 7.—Suspension for non-payment of dues, fines and assessments. See General Laws, sections 53 to 58.

### "ARTICLE XVI.—EXPENDITURE OF WAMPUM

"Section 1.—The wampum of this Tribe shall in no wise be disposed of; except for the relief of sick or distressed brethren, unable to follow the hunt, their widows or orphans; for defraying funeral expenses of deceased brethren; and for the discharging of the necessary expenses of the tribe economically administered.

"Sec. 3.—Any chief degree member who is called from these hunting grounds by the Great Spirit and leaves a widow, and she remains his widow until death; the sum of forty fathoms ($40) shall be paid over to the undertaker to defray or help to defray burial expenses of such widow. The tribe to be reimbursed by assessment."

Article XVII, captioned "Nurse for Sick Brother" provides for the furnishing of a nurse to a sick brother, who requires a nurse's service, for a period not exceeding three months at not exceeding $1.50 a day; and section 3 thereof reads in part as follows: "All nurse fees shall be paid from the general fund of the tribe, to be reimbursed by assessment of its members at the end of each quarter when dues are due."

The Tribe contends that under the correct interpretation and construction of sections 2 and 3, article XV, of the by-laws of the Tribe, if a member, while in good health, becomes in arrears for the payment of dues and assessments, he *may* pay up such dues after he becomes sick or disabled,

but such payment does not entitle either him or any person claiming through him to any benefits because of that spell of sickness or his death therefrom. Or to state it in another way, the Tribe contends that the clause in section 2, article XV, reading "any member taken sick or disabled during that period shall not be entitled to any benefits during such sickness or disability," and the clause in section 3, article XV, reading "but such payment does not entitle him to benefits during such sickness or disability" mean that neither he nor anyone claiming through him shall be entitled to any benefits because of such sickness or his death therefrom.

On the other hand the plaintiff contends that, when the by-laws are correctly interpreted and construed, these propositions are established:

1. There are four separate and distinct classes of benefits provided for in the by-laws: (a) Sick benefits, (b) members' funeral or burial benefits, (c) death benefits, and (d) wife's funeral or burial benefits. Two of these classes of benefits (sick benefits and wife's funeral or burial benefits) are payable to the insured. On the other hand, the other two (funeral or burial benefits and death benefits) are payable to the wife of the insured, the first to be used for the burial of the insured and the second for her own use.

2. A member in arrears is expressly permitted to pay up his arrearages after he becomes sick or disabled; but, notwithstanding such payment, is precluded from *himself* receiving any benefits during such sickness or disability.

3. By the express provision of the last clause in section 3, article XV of the by-laws, no funeral benefits are payable if the member dies from a sickness which had its inception while he was in arrear. But the expression "funeral benefits" means only the $40 payable under section 4, article VI, "to help defray his funeral expenses," and does not include within its meaning the $2 for each member of the Tribe in good standing which is payable to the widow under section 5 of article VI.

4. The language in section 3, article XV, which reads

"such payment does not entitle him to benefits during such sickness or disability," applies only to sick benefits and funeral or burial benefits in case of his wife's death, which are both payable to him. It has no application to benefits payable to the member's widow upon his death.

5. As the sum here sued for is a benefit payable to the widow for her own use, and the member was not in arrear when he died, she is entitled to recover, notwithstanding he died from a sickness which had its inception while he was in arrear.

The trial court seems to have followed and accepted the reasoning of the plaintiff. This chain of reasoning, we think, is not sound.

When the "By-laws of Red Cloud Tribe" are read and interpreted in the light of the "General Laws for Tribes," we think there are only two classes of contractual benefits provided for in the by-laws—(1) sick benefits and (2) funeral benefits, which latter class includes all benefits payable upon the death of a member or his wife. This interpretation is more consonant with the general spirit of the provisions of the "General Laws for Tribes" and the by-laws of the Tribe than that for which the plaintiff contends; and must be adopted unless section 5 of article VI of the by-laws is to be held to be a direct violation of section 52 of the "General Laws for Tribes."

The sum payable under section 5, article VI of the by-laws to the widow of a member is raised by assessment as provided in section 2, article V.

Section 52 of the "General Laws for Tribes" provides that "assessments may be made upon members for payment of sick or funeral benefits and orphans' tax *only*." (Italics ours.)

Section 86 of the "General Laws for Tribes" provides that when a greater amount than the minimum therein is provided for sick and *funeral* benefits "such excess may be disbursed as the by-laws may direct." (See, also, the last clause of section 96, making a similar provision relative to funeral benefits.)

We are of opinion that the authority for the assessment of the members for benefits payable to the widow is to be found in the language quoted from section 86 and the last clause of section 96 of the "General Laws for Tribes" relating to funeral benefits, and such benefit stands defined as a funeral benefit.

In this connection it may be noted that the language of the last clause of section 3 of article XV of the by-laws is "cannot * * * be entitled to funeral benefits in case of death." The use of the plural instead of the singular "funeral benefit" appears to be a recognition that the by-laws provide for more than one funeral benefit in case of the death of a member. There are only two benefits provided for in case of the death of a member—(1) the $2 for each member payable to the deceased member's widow, and (2) the $40 to be used to help defray his burial expenses. If only one of these was meant to be embraced by the language of the last clause of section 3, article XV, the singular would be the appropriate form.

We are of opinion that the true meaning of the by-laws is that the plaintiff is not entitled to the recovery here sought.

But the plaintiff under her second assignment of error contends that even if this be so, the Tribe has waived the forfeiture by accepting and retaining for nearly two months the payment of Wilson's dues and assessments.

This contention is without merit. Section 3, article XV, of the by-laws expressly gave Wilson the right to pay the dues and assessments for which he was in arrear while suffering from a sickness contracted while he was in arrear, but it also stipulated that such payment should not entitle him (or those claiming under him) to benefits until he had recovered from that sickness. In view of this provision the Tribe could not lawfully have refused to accept payment of these arrearages. He had the right to pay them so as to be entitled to the universal password and privileges of the order other than benefits; and the acceptance of the payment did not operate to waive the stipulation that the pay-

ment should not entitle him to benefits until he had recovered from the sickness from which he was then suffering.

The judgment of the trial court will be reversed, and judgment here entered for the plaintiff in error.

*Reversed.*