# Richmond

## Woodmen of the World Life Insurance Society v. Florence B. Grant.

June 10, 1946.

Record No. 3056.

Present, All the Justices.

The opinion states the case.

*Montague & Montague*, for the plaintiff in error.

*Thomas A. Williams* and *L. C. O'Connor*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

In 1894, Mr. R. N. Grant became a member of the Woodmen of the World Life Insurance Society of Omaha, Nebraska. At that time he applied for and secured a certificate for $2,000 life insurance. For fifty years he paid his premiums or dues, up until the time of his death in 1944. His widow, who was beneficiary in the certificate, filed proper proofs of death with the Society but it refused pay-

ment and rejected her claim upon the sole ground that the payment for January, 1944, had not been paid on time. The Society informed her that it should have been paid not later than January 31, while it was actually paid, as it contends, on February 21. Mrs. Grant thereupon brought an action at law against the Society and recovered a verdict for the face of the certificate, less the amount of a loan which Mr. Grant had obtained on the certificate in his lifetime. Motion was made to set aside the verdict and the court sustained the motion upon the ground that it had failed to instruct the jury correctly upon the law of waiver.

Thereupon the verdict was set aside and the case ordered to be again tried. Upon the second trial a verdict was returned in favor of the plaintiff, and the motion made to set it aside was overruled. The court entered judgment upon the verdict. We are asked to review the judgment and reverse it upon the ground that the evidence does not sustain a verdict in favor of the plaintiff, and upon the further ground that the court improperly instructed the jury.

The evidence discloses that Mr. Grant became a member of the Society in October, 1894, and held a benefit certificate as a member of Camp No. 3, located at Norfolk, Virginia. He later moved to Richmond and held his membership there. His payments were $5.32 each month. These are referred to as dues. At the time of his death he had used all of his loan benefits except $2.76.

It was claimed that the payment for January, 1944, was not made within the month of January, but made on February 21, 1944, and therefore the certificate was automatically suspended and became invalid, under the provisions of section 63(b) of the Constitution, Laws and By-Laws of the Society.

The contract upon which this action was brought is the certificate mentioned above and the Constitution, Laws and By-Laws of the Society. (See Code, sec. 4280, Michie.) The certificate holder is charged with knowledge of and was bound by all of these provisions and all amendments to

them. They constitute 101 pages of a booklet which carries an index of 12 pages. He is also charged with knowledge of the by-laws of his local camp. All of these are couched in technical and legal language and are naturally difficult for a layman to understand. Some of the laws appear to us to be unreasonable and arbitrary. For instance, sec. 111, provides that the financial secretary of each camp shall, on or before the 5th day of every month remit the funds of the Sovereign Camp to the secretary of the Society. Sec. 112 provides that if the secretary of the Society fails to receive the remittance before the 15th of the month the local camp and all its members shall stand suspended. Thus the omissions of the financial secretary are made chargeable to each member even though the member has complied with his contract and has promptly paid his dues to the officer authorized to receive them.

Section 63 of the Constitution, Laws and By-Laws, reads in part as follows:

"Sec. 63 (a). In order to accumulate and maintain funds for the payment of the benefits stipulated in beneficiary certificates held by the members of this society, as and when such benefits accrue, to maintain the reserves thereon and to provide for the payment of the expenses of the Society, every member of this Society shall make to the financial secretary of his Camp one annual payment in advance each year, or one monthly installment thereof, on or before the first day of each calendar month, as required by these laws or by the provisions of his beneficiary certificate, which shall be credited to and known as the Sovereign Camp fund; and he shall also pay such Camp dues as may be required by the by-laws of his Camp.

"(b) If he fails to make any such payment on or before the last day of the month it shall thereby become delinquent, he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the society shall thereby completely terminate, and all moneys paid on account of such membership shall be retained by

the Society as his liquidated proportionate part of the cost of doing business and the cost of the protection furnished on the life of said member from the delivery of his certificate to the date of his suspension; except as otherwise provided in his certificate or in sections 77 and 79."

It will be noted from this provision that Mr. Grant had until the last day of each month to pay his dues, and if he paid them on or before the last day of each month he would not become delinquent. If a member failed to pay his dues on or before the last day of each month he became delinquent and was thereby automatically suspended and his certificate became void. One of the issues in this case was whether or not Mr. Grant had paid or had failed to pay the January, 1944, dues on or before the last day of January. The beneficiary contended that this payment had been made on time; while the Society contended that it had not been made until February 21, and therefore he was suspended, and in order for his certificate to again become valid it was necessary that he be reinstated in accordance with the rules and regulations of the Society as expressed in the Constitution, Laws and By-Laws. It was also further contended that one of these requirements is that the person suspended can only become reinstated upon the condition that he is in good health and that he represents that he will remain in good health for thirty days after such attempt to again become a member, and of course, that he will pay up any back dues. This requirement is set forth in section 65.

The jury, from the plaintiff's evidence, could have believed that there was no default in the payment of the premium or dues for January, 1944. The premium receipt book kept by the Financial Secretary discloses that $5.32 was paid on January 4, and January 31. It was further testified that two payments were made in January, 1944, one on January 4, and one on January 31, each for $5.32, but the financial secretary says he turned these payments over to the representatives of Mr. Gentry, the former authorized agent, who had died. Mrs. Grant testified that she made the two payments in January and that they were to satisfy the dues

for January 1944. Mrs. Grant further testified that she made two additional payments in February, 1944, and it was conceded by the defendant that at the time of the death of the insured all premiums or dues on the certificate or policy had been paid and were in the hands of the Sovereign Society at its home office in Omaha, Nebraska. The premium or dues for March, 1944, would not have been in default until March 31, and Mr. Grant died on March 26, 1944, five days before that time. Under this evidence the jury could have found that the policy or certificate of insurance was never legally suspended, and therefore no reinstatement of it was necessary; that it remained alive and uninterrupted by any suspension.

If this were the conclusion of the jury, and it readily might have been from the plaintiff's evidence, then the question of whether the defendant waived the provisions of the contract in respect to the prompt payment of premiums became immaterial.

Counsel for the defendant in his zeal most insistently contends, even in the face of the testimony of Mrs. Grant, which evidently was believed by the jury, that the January, 1944, premium was in default and that the policy had lapsed or was suspended. He invokes the by-laws against the reinstatement of Mr. Grant and seeks to make that the determinative issue. He denies that there could have been a waiver because of the lack of knowledge of the defendant. He invokes section 63(a), (b) and (c), sections 64, 65, 68, 82(a) and (b), 83, 107(g) and (h), with which he no doubt is well versed as evidenced by his exhaustive brief on the subject. But even here the plaintiff stands upon solid ground for the questions of suspension, reinstatement, and waiver were submitted to the jury upon comprehensive instructions and upon the conflicting evidence, with the result that these issues have been resolved against the defendant.

Unless we perceive some reversible error of law committed by the trial court we must affirm the judgment.

The case was tried with great care. There was no substantial difference in the evidence at the two trials. The in-

structions were painstakingly prepared not only by counsel but by the court itself. It granted instructions covering precisely and comprehensively every phase of the case, and the jury's verdict in favor of the plaintiff was approved by the court.

■ ■ If we ignore the testimony of Mrs. Grant and the other evidence to the effect that she paid the January, 1944, premium, and ignore the finding of the jury on this point and accept the theory of the defendant that the determinative factor is whether the defendant waived the requirements of its Constitution, Laws and By-Laws relating to suspension and reinstatement of the certificate holder who might have been in default, we are forced to conclude that this issue was also settled by the verdict of the jury which we think was rendered upon evidence sufficient to sustain it. The verdict approved by the trial court requires this court in its review of the case to look only to so much of the evidence as is favorable to the plaintiff. *Bristow* v. *Brauer*, 175 Va. 118, 7 S. E. (2d) 93. Where there is a conflict in testimony on a material point, as we have in this case, the verdict is conclusive.

If Mrs. Grant actually paid the January, 1944, premium on February 21, 1944, as contended by the defendant, then under section 63 of the Constitution, Laws and By-Laws, the defendant could have insisted that the certificate was suspended because that premium had to be paid on or before January 31, 1944. That section also provides that in such case, subject to other numerous sections, such suspended person, *if in good health,* may thereafter make a new contract with the Society upon the same terms and conditions. A suspended person, under section 64, is not entitled to the benefits of the Society, nor shall he receive the password of the camp to which he has belonged.

Section 65 provides as follows:

"Sec. 65. Any person who has become suspended by his failure to pay any monthly installment may, if living, within fifteen days from the date of his suspension again become a

member of the Society by the payment of the delinquent installment to the Financial Secretary of the Camp. After fifteen days and within three months from the date of his suspension he may again become a member of the Society by the payment of the delinquent installments, provided he is in good health at the time of such payment and remains in good health for thirty days thereafter.

"Whenever payments are made by a person who has been suspended for more than fifteen days, for the purpose of again becoming a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such installments when so paid after he has become suspended by not making payments, as well as all subsequent payments by him made, shall be received and retained by the society without waiving any of the provisions of this section, or of these laws, until such time as the secretary of the Society shall have received actual, not constructive or imputed, knowledge that the suspended person was not in fact in good health when he attempted to again become a member, or did not remain in good health for thirty days thereafter. Provided, that the receipt and retention of such payments, in case such person is not in good health, or does not remain in good health for thirty days thereafter, shall not make such person again a member of the Society, nor entitle him or his beneficiary or beneficiaries to any rights whatever."

And section 82(a) provides:

"Sec. 82(a). No officer, employee or agent of the Society or the Sovereign Camp, Head Camp or of any camp, has the power, right of authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this Constitution or these laws, nor shall any custom or course of dealing on the part of any Financial Secretary or of any Camp or any number of Camps—with or without the knowledge of any

officer of the society—have the effect of so changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the Constitution and laws, then in force or thereafter enacted, nor shall the knowledge or act of any officer or employee of this Society constitute a waiver of the provisions of these laws by the Society or an estoppel of this Society."

█ This provision goes beyond the powers conferred by Code, sec. 4291. There it is permitted that the laws of the Society may provide that no *subordinate* lodge, nor any *subordinate* officer or members may waive any of the laws, but the statute does not authorize the Society to provide that the officers of the *Sovereign Camp* or the *home office* may not waive the laws of the Society. Sec. 82 provides that not only a subordinate lodge or officer cannot waive the laws of the Society but in addition it provides that no officer or agent of *the Society* or *the Sovereign Camp*, head camp or any camp, has the power to waive any of the laws of the Society.

██ The law of this Commonwealth is as defined in instruction H. Waiver applies to any right conferred by law or contract. This right may or may not be exercised by the person holding it. He may waive it expressly or impliedly. He may waive it by conduct, acts, or a course of dealing. It is essential that he must have knowledge of his rights and that he must intend to waive them. See Digest of Virginia and West Virginia Reports, (Michie), Vol. 9, p. 982. Therefore, if the Sovereign Camp at Omaha, Nebraska, had the right under its laws to suspend Mr. Grant and to reinstate him provided he were in good health and had paid his dues, the Sovereign Camp could have waived this right regardless of section 82 of its laws. See *Home Beneficial Ass'n* v. *Field*, 162 Va. 63, 173 S. E. 370.

The foregoing is not only the law in Virginia but appears to be the law in most jurisdictions. See 38 Am. Jur., Mutual Benefit Societies, secs. 111, 112, 113, and 114; annotation in 108 A. L. R., pages 688 to 693, inclusive.

The Constitution, Laws and By-Laws form a part of the contract between the Sovereign Society and the member, and restrictions upon the power of an agent of the Society to waive any of the conditions of the contract or upon the manner of such waiver are themselves conditions of the contract which may be waived the same as any other condition. This seems to be the general rule as disclosed by the annotation in 108 A. L. R., page 692. This annotation collects many of the cases from a large number of jurisdictions. In fact, it constitutes an excellent brief on the subject of waiver in cases similar to the one at bar.

The court, over the defendant's objection, granted instruction H, on the question of waiver. It reads:

"The court tells the jury that waiver is the intentional relinquishment of a known right, with knowledge of its existence and an intention to relinquish it; and that if the plaintiff claims that the defendant waived any of the conditions of the contract as to suspension of membership, the burden of proof is upon the plaintiff to prove by a preponderance of evidence such waiver, and to prove the intent on the part of the defendant to make such waiver. Waiver need not be proved by express statement to that effect. It may be proved by the acts, conduct, or dealings of the defendants."

The objection to this instruction was to the last sentence, "It may be proved by the acts, conduct, or dealings of the defendants". The defendant contended that the acts, conduct, and dealings should have been limited to its home office, and when so limited, there was no evidence of such.

The defendant's contention ignores the testimony of Mrs. Grant and the exhibits which tend to show that over a long period the Society had accepted past-due payments on this certificate without protest. In addition to this, the authorized agent at Richmond, Virginia, received two monthly installments on February 21, 1944. These were sent to the home office on March 5, 1944, and there audited and approved by the Sovereign Society on March 15, 1944, and

the proceeds actually placed in its account. It was not until April 17, 1944, or twenty-three days after the death of Mr. Grant that the defendant protested or returned the payments made on February 21. When these two payments reached the home office and were audited and retained by the defendant it was bound to have known that the payments were not in strict accord with the Constitution, Laws and By-Laws, for the Society was entitled to only one payment a month. If the Society desired to enforce the by-law it should have returned the payment to Mr. Grant instead of retaining it, informing him that he was suspended and that his rights under his contract of fifty years standing were at an end. Instead of doing this, the Society retained the money and made no protest.

Mr. Chandler, the financial secretary at Richmond, testified that Mr. Grant failed to pay the November and December, 1943, dues within the required time; that the reports to the Society disclosed these defaults, and that those reports were audited by the Society. He further testified that Mr. Grant was not suspended for either November or December defaults. He further testified that the November payment was made on January 4, 1944, and that the December payment was made on January 31, 1944. If he is correct and the defaults of November and December were disclosed on his reports to the Society, and it audited the reports, this would tend to support the claim that the Society itself had knowledge that the payments were not being made on time and that it waived strict compliance with the laws of the Society. This and the other evidence was sufficient to carry the question of waiver to the jury.

Instruction number one reads as follows:

"The court instructs the jury that if you believe from the evidence in this case that the defendant issued the insurance certificate in question, insuring the life of Richard N. Grant, and that the insurance lapsed because of failure to pay the monthly premium for the month of January, 1944, but that that premium was subsequently paid on February 21, 1944,

and accepted by the defendant while the insured was in good health, then the court tells you that the insurance was in full force and effect at the time of his death in March, 1944, and you should find your verdict for the plaintiff."

The objection to this instruction was to this language, found near the end of the instruction: "and accepted by the defendant while the insured was in good health".

Under the law of the Society a suspended member could not be reinstated unless he were in good health and remained in good health for thirty days after the application for reinstatement. However, this law, and all of the others made for the benefit of the defendant, could have been waived.

It is true the doctors testified that Mr. Grant had suffered from myocarditis and possibly Berger's disease for sometime prior to his death. However, these did not cause his death. His death was due to an attack of pneumonia which lasted a week. Mrs. Grant testified that prior to his last illness Mr. Grant was in good health for one of his age which was seventy-three years; that he was not and had not been confined to his bed for sometime before his last illness; that he walked a great deal, and generally was as well as a person ordinarily would be of that age. We think the evidence was sufficient to carry this question to the jury. Here again the court carefully instructed the jury in instruction X, given on its own motion, defining the meaning of "good health". That instruction is:

"The court instructs the jury that the words 'good health' are applicable to the condition of health of Richard N. Grant on the 21st day of February, 1944, means apparent good health without any ostensible or known or felt symptom of disorder and does not exclude the existence of latent unknown defects."

There is evidence tending to show that there was no suspension of Mr. Grant. Mrs. Grant testified she paid the January, 1944, premium. If the jury believed her, then of course there was no suspension and the question of good health was not material. Also if Mrs. Grant did not pay that

premium on time there is evidence tending to show that the Sovereign Society waived strict compliance with the requirement. If the Society had the right to suspend Mr. Grant and waived it, the question of good health would likewise be immaterial. On the other hand, if the jury believed the premium was not paid on time and Mr. Grant was suspended, he had the right to be reinstated if he were in good health and remained so for thirty days. If the jury believed he was suspended then it was also their province to conclude the question of good health. Mrs. Grant testified that he was in good health and remained so for thirty days. On this evidence the jury could have resolved the issue in her favor.

We think the objection to instruction number one is without merit.

The court, in instruction Y, also given upon its own motion, told the jury that the burden was upon the defendant to prove that the certificate was not in effect on the 21st of February, 1944, and at the time of the death of Mr. Grant. It also told the jury that the burden was upon the defendant to prove that Mr. Grant's health was not good on February 21st when it accepted the premiums for January and February.

This instruction was objected to because the defendant claimed it placed the burden of disproving a waiver upon the defendant when under the law the burden of proving a waiver is always upon him who claims it.

The plaintiff having proven that Mr. Grant held a certificate in the Society, had paid all of the premiums thereon, and had died, it was then the burden of the defendant to prove that he had been suspended and that the policy was not in effect at his death. And if the defendant contended that Mr. Grant had not been reinstated on account of ill health it was the duty of the defendant to bear the burden of proof on this issue. We see no objection to the instruction.

In summary, it might be of benefit to point out briefly, even at the risk of some repetition, that there are three

determinative aspects of the case, any one of which• might have been found by the jury on the evidence in favor of the plaintiff and which would be binding upon this court upon our review:

1. The jury might have found that there was no default in the payment of the January, 1944, premium.

2. It may have found that the Society waived its right to suspend Mr. Grant if the premium had not been paid on time as contended by it; and,

3. It may have found that the premium for January, 1944, was not paid on time; that Mr. Grant was suspended but duly and properly reinstated.

There are many other objections to the instructions but they, in the main, revolve around the question of waiver, which we have already discussed.

Objection was made by the defendant because the court attempted to clarify the instructions upon the request of the jury when it had reported its inability to agree. What the court said upon that occasion was in an effort to assist the jury in finding a verdict. The language used disclosed the impartial and unbiased attitude of the court, and we find no reversible error in that action.

The appellant relies upon the case of *Red Cloud Tribe* v. *Wilson*, 164 Va. 178, 178 S. E. 685, but that case is readily distinguished from the one at bar on the facts. This is apparent from a reading of the case.

Nothing in this opinion is contrary to the expressions in *Knights of Columbus* v. *Burroughs*, 107 Va. 671, 60 S. E. 40, 17 L. R. A. (N. S.) 246.

The judgment is affirmed.

*Affirmed.*