COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Russell and Athey
Argued at Fredericksburg, Virginia


WANDA COOPER

v.      Record No. 0969-19-4

RONALD MACK COOPER

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
MARCH 24, 2020


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Craig D. Johnston, Judge

Ashleigh N. Iszard (Patrick V. Foltz; Dougherty Tobias Iszard
Northern Virginia Law, P.C., on briefs), for appellant.

Heba K. Carter (Stephen Halfhill; Allred, Bacon, Halfhill &
Young, PC, on brief), for appellee.


Wanda Cooper ("wife") appeals from a final decree of divorce entered in the Circuit

Court of Prince William County ("trial court"), incorporating the marital agreement wife had

entered into with her former husband, Ronald Mack Cooper ("husband").  Wife alleges that

(1) "[t]he trial court erred when it accepted and incorporated an incomplete property settlement

that was accepted into the record without that agreement being complete or objectively manifest

in the record," and (2) that "[t]he trial court erred when it used and incorporated a partial

property settlement agreement into the final divorce decree and entered that decree without

hearing further evidence."  We disagree and affirm the trial court's judgment.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  BACKGROUND[1]

Husband and wife were married at the military base in Fort Belvoir, Virginia on October 17, 1998.  On March 31, 2016, wife filed a complaint in the trial court requesting a divorce based upon living separate and apart in excess of one year, requesting her attorney's fees, court costs, spousal support, and "a fair and equitable monetary award under [Code § 20-107.3] . . . based on the equities and her rights and interests in the marital property of the parties."

On April 25, 2016, husband responded by filing an answer and counterclaim in which he requested a "monetary award pursuant to [Code § 20-107.3]," arguing in response that "this is not a case in which the Court would award either party spousal support because the incomes of the parties are similar."  Husband further requested that the trial court award him "all court costs and counsel fees incurred in this matter."

Trial was set for May 3, 2017.  One week before trial, wife consented to her attorney's withdrawal from the case.  Counsel's motion to withdraw stated that "[c]ounsel has made [wife] fully aware that moving forward without counsel is not in her best interest."  Husband only agreed to the withdrawal if wife did not request a continuance.

At trial, an unidentified friend of wife approached husband's attorney and stated that wife "wished to settle the case."  Upon meeting with wife, husband re-extended the last settlement offer he made to wife, which included him taking responsibility for the mortgage debt related to the marital home and receiving one-half of the marital share of the parties' retirement accounts. Both parties would have to pay their own attorney's fees.

Wife discussed the proposal with her sons and her friend and subsequently met with husband's counsel several times that morning regarding the offer.  Husband's counsel eventually

---

[1] Pursuant to familiar appellate principles, the evidence is summarized in the light most favorable to the prevailing party at trial, husband in this matter.  Brown v. Brown, 30 Va. App. 532, 535 (1999).

informed wife that if she "did not wish to accept the offer, she did not have to, and that the parties should start trial." Husband's counsel further informed wife that "either there would be an agreement, or the parties would put the matter before the court in trial." Wife "agreed to the settlement offer and did not wish to proceed to trial."

The trial court explained that it wanted to ensure that the parties had reached an agreement before proceeding because proceeding "uncontested without evidence may depend on the parties having reached an agreement." Wife then addressed the trial court by stating, "I have something to say before we—" when her unidentified friend interrupted and asked the trial court whether she had permission to approach wife. The trial court responded by explaining the procedure and emphasizing that after the terms of any agreement reached had been recited, wife would have the opportunity to state whether the recitation accurately reflected their agreement. The trial court then allowed wife to confer with her friend, and the trial court advised both parties as follows:

> So, at this juncture, what I'm understanding is to occur is that counsel is intending to recite what she believes the parties have agreed. And then I will ask the parties to be placed under oath and let the[m] affirm that. And that further what is contemplated is that I'll hear some brief evidence, which the law requires me to hear, as to the grounds for divorce. Then there would be a presentation of the final divorce decree . . . which would grant whichever party's presenting evidence the no fault divorce as well as incorporate whatever they'[v]e reached by way of an agreement.

Counsel for husband then recited the agreement on the record. The trial court advised wife, "I'll let you think about it before I ask the Clerk to swear you to be sure that that is in fact your agreement." Wife's friend then asked whether she could speak to wife; the trial court responded, "I'm [going to] let her decide whether she needs to talk to anybody before she tells me that that is her agreement."

Wife then asked the trial court, "[c]an I say the reason all this came about?"  The trial court indicated that it did not want to hear the reasons for the divorce "because it is in fact a no fault divorce," meaning it is not legally "based on the reasons the parties separated or the reasons they're getting divorced, but rather on the fact that they've been separated for a year."  Wife replied, "[t]here's more to it than that," to which the trial court replied that it had "never had a divorce case where there was not a huge story."  Wife responded, "[o]kay."

The trial court added that wife should question whether an agreement had been reached if she desired to present evidence, which would involve "large costs," stating "if your desire is to tell me about it, I think the appropriate thing to do is to ask you whether in fact yo[u] have reached the agreement that counsel recited that you have reached."  Without hesitation, wife responded:  "I would like to receive my court cost[s] and just get my divorce done."

The trial court replied that it presumed the agreement counsel had recited on the record "is the agreement."  Because the agreement was silent on court costs, the trial court explained that it was unclear how wife would receive court costs when such relief was not included in the recited agreement.  Following additional discussion, the trial court stated to wife that the proceeding was not the trial "if you reached an agreement."  However, the trial court offered to take a recess if wife needed additional time to consider the agreement before being sworn.  Wife declined the recess:  "No, I don't want a recess, can I just ask [my friend] a question?"  The trial court permitted wife to do so, and the parties were subsequently sworn.

The trial court then asked husband, "whether what counsel has recited as being your agreement is in fact your agreement," and husband responded affirmatively.  The trial court then asked wife, "[a]nd you, Mrs. Cooper, is this your agreement?"  She responded, "[y]es."  The trial court then took additional testimony to establish the grounds for divorce, which the trial court explained "are on the grounds of one-year separation."

The trial court subsequently granted the divorce on the grounds of one-year separation. Wife then asked to "say something" about husband. The trial court stated that an agreement had been reached, and evidence of the agreement had been taken on the record. Wife responded, "[y]es."

The trial court then explained that the divorce was "uncontested" in nature and stated to wife, "indeed your complaint for divorce does not allege . . . any fault . . . as [a] basis for the divorce." The trial court then stated the following:

> So, if you've resolved the grounds for divorce insofar as it being one-year separation, and you resolved the other matters in controversy, then to the extent you tell me things . . . you're asking, thinking about asking me to reconsider or decide that you didn't actually agree to what you just told me you agreed to.

Wife replied, "[w]ell, that's—it's the way she put it, his attorney. I don't have an attorney. . . . Adultery doesn't count? I don't know how it works." The trial court explained that all it could tell wife was that the next step in the matter would be the presentation of the final decree of divorce ("final decree") and that fault would not be relevant unless wife wanted to "undo" the agreement. Wife never objected to the agreement.

The trial court then set a date for the presentation of the final decree. By motion filed May 22, 2017, wife opposed the entry of the final decree, contending that the agreement was invalid, unconscionable, contrary to public policy, and a product of fraud, nondisclosure, and duress. Husband responded that the agreement was valid, not unconscionable, and that wife failed to show that the agreement was a product of duress, nondisclosure, or fraud when husband had provided her with all relevant and requested documents during discovery. After hearing oral argument regarding wife's contentions,[2] the trial court found the agreement valid under Code

---

[2] Wife withdrew her allegations of fraud during oral argument, and she raised no argument that the agreement was unconscionable, contrary to public policy, or a product of nondisclosure and duress with this Court.

§ 20-155. The trial court then denied wife's motion and entered the final decree, which incorporated the agreement husband and wife recited on the record on May 3, 2017. This appeal followed.

## II. STANDARD OF REVIEW

Because resolving this appeal turns upon whether the agreement—the terms of which the trial court incorporated into the final decree—was a binding marital agreement pursuant to Code § 20-155, a question of law, we review the construction and application of the statute *de novo*. Gaffney v. Gaffney, 45 Va. App. 655, 665 (2005). However, we defer to the factfinder's judgment as to whether the evidence was sufficient for the factfinder to find the statute satisfied. Galloway v. Galloway, 47 Va. App. 83, 92 (2005). "If there is credible evidence in the record supporting the factual findings made by the trier of fact, we are bound by those findings regardless of whether there is evidence that may support a contrary finding." Id.

Additionally, "[w]hen reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Niblett v. Niblett, 65 Va. App. 616, 622 (2015) (quoting Congdon v. Congdon, 40 Va. App. 255, 258 (2003)). Accordingly, we "'discard the evidence' of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial." Congdon, 40 Va. App. at 258 (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380 (2002)). Thus, we consider the factual basis the trial court used in finding assent (and therefore an agreement pursuant to Code § 20-155) in the light most favorable to the prevailing party, which is husband here.

III. ANALYSIS

A. Mutual Assent, Waiver, and Validity Pursuant to Code § 20-155

Wife first contends that "[t]he trial court erred when it accepted and incorporated an incomplete property settlement that was accepted into the record without that agreement being complete or objectively manifest in the record." Specifically, she argues that there was no mutual assent that the agreement dispose of all disputed issues when the agreement neither addressed her prayer for spousal support nor for a monetary payment. Because the evidence establishes that wife objectively manifested assent that the agreement end the litigation, she waived her claims for spousal support and monetary payment.

Agreements entered into pursuant to divorce proceedings are contracts "subject to the same rules of formation, validity and interpretation as other contracts," so we apply the same principles applicable to contracts generally to find whether wife manifested her assent to the agreement. Smith v. Smith, 3 Va. App. 510, 513 (1986). This "involves a determination of the parties' intention, as *objectively* manifested." Snyder-Falkinham v. Stockburger, 249 Va. 376, 381 (1995) (emphasis added); see also Lucy v. Zehmer, 196 Va. 493, 503 (1954) ("[T]he law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. If his words and acts, judged by a reasonable standard, manifest an intention to agree, it is immaterial what may be the real but unexpressed state of his [or her] mind."). We determine the objective intention of the parties "from an examination of the entire [agreement], giving full effect to the words the parties actually used." Layne v. Henderson, 232 Va. 332, 337-38 (1986).

Applying these principles, we impute to wife an intention corresponding to the reasonable meaning of her words and acts, which objectively communicated her assent that the agreement end the litigation. Her subjective belief that she would have some future opportunity

to present evidence on her claims for spousal support and the monetary payment is irrelevant when that belief remained unexpressed.

Through her words and actions on May 3, 2017, wife objectively manifested an intention to avoid trial and to end the litigation. Through her friend approaching husband's counsel, she first inquired into the possibility of settling the divorce and not going to trial. After counsel extended a settlement offer to her, she took nearly an hour to discuss and consider its terms with her friend and family. At any of the multiple instances in which she conferred with husband's counsel, she could have objected to the absence of the relief she initially prayed for—spousal support and a monetary payment—yet the record contains no indication that she objected. As husband's counsel grew increasingly concerned with the time settlement discussions were taking, wife was advised that they could instead proceed to trial and that she did not have to agree. After considering this alternative, she "agreed to the settlement offer and did not wish to proceed to trial."

Before wife accepted the agreement on the record, the trial court took great care in ensuring that she understood the proceeding and agreed to end the litigation through settlement. Several times before she entered into the agreement, the trial court established that there would either be a presentation of evidence in a trial, or an agreement—not both. First, the trial court explained to her that proceeding "uncontested without evidence may depend on the parties having reached an agreement." At another point in the proceeding, the trial court stated, "[i]t is the trial, but it's not if you reached an agreement." When, at another point, she raised the reasons for the divorce, the trial court explained that because of the agreement, she did not need to present evidence such as in a trial, which would involve "large costs."

The trial court allowed wife to confer with her friend before husband's counsel read the agreement on the record. After husband's attorney recited the agreement, the trial court even

stated to her, "I'll let you think about it before I ask the Clerk to swear you to be sure that that is in fact your agreement." Furthermore, the trial court told her friend that wife had the power to "decide whether she needs to talk to anybody before she tells me that that is her agreement."

When wife raised the reasons for the divorce, the trial court explained to her that if she instead wanted to discuss those, "the appropriate thing to do is to ask you whether in fact yo[u] have reached the agreement that counsel recited that you have reached." When wife responded without hesitation, "I would like to receive my court cost[s] and just get my divorce done," she manifested her intention to end the litigation without presenting evidence. Explaining that it was unclear how court costs would be awarded when the agreement was silent on that relief, the trial court communicated to her that any relief counsel had not recited in the agreement would not be provided. By implication, the relief would not include court costs, spousal support, or a monetary award, as none of these issues were raised in the agreement. As the trial court advised wife, the agreement counsel recited on the record "is the agreement."

The trial court offered wife a recess—which she declined—and an opportunity to confer with her friend again—which she accepted—before she assented to the agreement on the record. Once she was sworn, wife agreed to the terms as recited by responding "[y]es" when the trial court asked, "[a]nd you, Mrs. Cooper, is this your agreement?" When wife later asked to "say something" about husband, the trial court, again, confirmed with her the understanding that an agreement had been reached and evidence of the agreement had been taken on the record when she previously responded, "[y]es." Thus, wife not only assented to the agreement on the record—she confirmed a second time on the record that she had agreed to be bound by its terms.

The trial court then allowed wife two opportunities to reconsider the agreement. After explaining the "uncontested" nature of the divorce again, the trial court added

> So, if you've resolved the grounds for divorce insofar as it being
> one-year separation, and you resolved the other matters in

controversy, then to the extent you tell me things . . . you're asking, thinking about asking me to reconsider or decide that you didn't actually agree to what you just told me you agreed to.

Wife did not respond that she was reconsidering agreeing to the settlement; rather, she replied, "[w]ell, that's—it's the way she put it, his attorney. I don't have an attorney. . . . Adultery doesn't count? I don't know how it works." The trial court then offered wife another opportunity to avoid the agreement, stating that any fault she perceived would not be relevant unless she wanted to "undo" the agreement. Although the record shows that wife had no issue addressing the trial court, she did not take advantage of that opportunity. Rather, she allowed the trial court to conclude the hearing with the agreement intact.

For all of these reasons, we find that wife's actions and words manifested her intention to enter into the agreement, forgo a trial, and end the litigation. The same evidence shows that she intended to waive all forms of relief the agreement did not address.

Waiver may apply to any right "conferred by law or contract." Gordonsville Energy, L.P. v. Va. Elec. & Power Co., 257 Va. 344, 356 (1999). "If the party being charged with relinquishment of a right had knowledge of the right and intended to waive it, the waiver will be enforced." Id. Code § 20-109(C) states, in pertinent part, that

> [i]n suits for divorce . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract.

When the record shows that wife knew that she had a right to present evidence at a trial rather than enter into the agreement and knew that any relief not stated in the agreement would not be provided—yet accepted the agreement as stated on the record—wife waived her right to present evidence on any other relief she prayed for in her complaint, including spousal support

- 10 -

and a monetary payment. Precedents favor marital settlements and proscribe interference with lawful exercises of "freedom of contract"[3] such as this agreement, which the trial court accepted as completely resolving the litigation.

Code § 20-150, which wife relies upon in contending that the agreement was "incomplete," permits—but does not require—the contracting parties to resolve issues such as spousal support and disposition of property. See Code § 20-150 (using "may" in providing that "[p]arties to a premarital agreement may contract with respect to" these issues indicates that this practice is discretionary, and the statute also pertains to premarital—not post-marital—agreements). Furthermore, Code § 20-155 does not require the contracting parties to address all of the issues in existence between them in an agreement. Wilson v. Wilson, No. 1958-03-02, at *3 (Va. Ct. App. Jan. 13, 2004). Therefore, an agreement may nonetheless be valid, enforceable, and comprise the parties' full agreement despite its failure to address all issues between the parties.

Although a marital agreement shall generally be "in writing and signed by both parties" pursuant to Code § 20-149, Code § 20-155 provides an exception to this requirement:

> If the terms of such agreement are (i) contained in a court order endorsed by counsel or the parties or (ii) recorded and transcribed by a court reporter and affirmed by the parties on the record personally, the agreement is not required to be in writing and is considered to be executed.

See also Gaffney v. Gaffney, 45 Va. App. 655, 670 (2005) (finding this statute satisfied when the terms of the agreement are "read or recited into the record in the presence of a court reporter and the parties . . . specifically and affirmatively manifest their assent to those terms on the record").

---

[3] Courts "are not lightly to interfere" with lawful exercises of the "freedom of contract." Atlantic Greyhound Lines v. Skinner, 172 Va. 428, 439 (1939); see, e.g., Cooley v. Cooley, 220 Va. 749, 752 (1980) ("[M]arital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain.").

Here, the exception to the writing requirement in Code § 20-155 applies because the terms of the agreement were recorded and transcribed into the record by a court reporter, and both parties—husband and wife—personally, specifically, and affirmatively manifested their assent to those terms on the record. The trial court properly concluded that once that occurred, the agreement had been executed under the statute. Finding no error in the trial court's judgment as to wife's first assignment of error, we proceed to her second argument.

B. Incorporation of the Agreement into the Final Decree

Wife also contends that "[t]he trial court erred when it used and incorporated a partial property settlement agreement into the final divorce decree and entered that decree without hearing further evidence." Wife specifically argues that she expected the trial court to hold a trial and hear evidence regarding her claims for spousal support and a monetary payment. As discussed above, wife's argument is unpersuasive.

Pursuant to statute,

> [a]ny court may affirm, ratify and incorporate by reference in its decree dissolving a marriage or decree of divorce whether from the bond of matrimony or from bed and board, or by a separate decree prior to or subsequent to such decree . . . any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties, or either of them and the care, custody and maintenance of their minor children, or establishing or imposing any other condition or consideration, monetary or nonmonetary. . . . Where the court affirms, ratifies and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree.

Code § 20-109.1. We have interpreted the language of this statute as "giv[ing] the trial court discretion in determining whether a property settlement agreement should be incorporated by reference into a final decree of divorce." Forrest v. Forrest, 3 Va. App. 236, 239 (1986). We

emphasized in <u>Forrest</u> that "[a]bsent an abuse of discretion, the trial court's decision must be upheld on appeal." <u>Id.</u>

When a person requests a divorce based on separation rather than fault, the grounds for divorce are deemed complete at the expiration of the statutory separation period. Code § 20-91(A)(9)(a); <u>see</u> <u>Williams v. Williams</u>, 14 Va. App. 217, 219 (1992) (affirming a divorce on separation grounds even though husband arguably had sufficient evidence of adultery when a trial judge can use discretion to select the grounds for the divorce).

Here, the trial court did not abuse its discretion by incorporating the agreement into the final decree. With the agreement in place, the trial court had no duty to take any additional action before entering the final decree when testimony from husband and another witness established the grounds for divorce after the conclusion of the statutory separation period.

Although adultery is a fault ground for absolute divorce in Virginia pursuant to Code § 20-91(A)(1), wife brought her divorce action based upon no-fault separation grounds rather than fault grounds. When she raised a claim of adultery at the hearing, the trial court explained the "uncontested" nature of the divorce to her, adding, "indeed your complaint for divorce does not allege . . . any fault . . . as [a] basis for the divorce." The trial court further explained that fault was irrelevant unless she had reconsidered entering into the agreement. When wife left the agreement intact, the trial court had no notice of any need to take evidence. Accordingly, the trial court concluded the hearing without setting another date to hear evidence and scheduled the entry of the final decree.

Because trial courts have the discretion to incorporate a marital agreement into a final divorce decree and, as discussed, the parties intended for the agreement to serve as a final agreement that would obviate the need for a trial, the trial court did not err by not hearing further

evidence when wife assented to the terms counsel for husband recited on the record and the divorce was premised upon a one-year separation.

## IV. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

<u>Affirmed.</u>