UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:     Judges Beales, O'Brien and Russell
Argued by videoconference

LISA SCHULKEN BARTOSCH

MEMORANDUM OPINION* BY
v.       Record No. 1249-20-4        JUDGE RANDOLPH A. BEALES
JANUARY 18, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Michael E. Levy, Judge

Marc T. Massey (John C. Kiyonaga; Law Office of John C.
Kiyonaga, on brief), for appellant.

Ken J. Baldassari, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.

Pursuant to a plea agreement, appellant Lisa Schulken Bartosch entered an *Alford* guilty

plea to the first-degree murder of her husband, Scott Bartosch. In this appeal, we consider whether

the Circuit Court of Stafford County erred in denying Bartosch's motion to withdraw her plea.

I.  BACKGROUND

Bartosch entered a plea of guilty, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970),

to one count of first-degree murder. Before the trial court accepted the plea, the Commonwealth

proffered the evidence it would have presented if the case had gone to trial. The Commonwealth

proffered that Bartosch hid bills from her husband for years and neglected to pay the mortgage on

the family home. Unbeknownst to her husband, Bartosch allowed the home to go into foreclosure.

The home was actually sold on the courthouse steps, and the new owner began eviction proceedings

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

after discovering that the Bartosches had not moved out. A summons – later discovered in Bartosch's pocketbook – stated that a hearing on the eviction proceeding was scheduled in the Stafford County General District Court for 9:00 a.m. on May 1, 2017.

The Commonwealth proffered that around 9:00 a.m. on the morning of May 1, 2017, Bartosch poured gasoline on the victim as he slept in the couple's bed. She ignited an open flame, lit the victim on fire, and stabbed him with a knife. The victim awoke and ran out of the house where neighbors came to his aid. Bartosch, unclothed but wielding two knives, followed the victim out into the front yard, where a neighbor disarmed her before she could reach the victim again. The victim immediately told the neighbors, law enforcement, and the emergency medical personnel who soon arrived on the scene that Bartosch had poured gasoline on him, had stabbed him, and had set him on fire. The victim was airlifted to a hospital burn unit in Washington, D.C., where he died from his injuries four weeks later on May 29, 2017.

Bartosch was taken into custody. She was subsequently evaluated at Central State Hospital, where two psychologists who treated her found that she was not competent to stand trial as of June 2017. Specifically, they concluded that "Ms. Bartosch is viewed as currently NOT meeting criteria or competency to stand trial" but stated that "there are strong concerns about malingering that cannot yet be ruled out." Consequently, they "recommended that a restoration order be issued" so that Bartosch could receive treatment to restore her competency as provided by Code § 19.2-169.2.[2] In January 2018, the same psychologists concluded that Bartosch was still "in need of additional

---

[2] In relevant part, Code § 19.2-169.2(A) provides,

> Upon finding pursuant to subsection E of § 19.2-169.1 that the defendant . . . is incompetent, the court shall order that the defendant receive treatment to restore his competency on an outpatient basis or, if the court specifically finds that the defendant requires inpatient hospital treatment, at a hospital designated by the Commissioner of Behavioral Health and Developmental Services as appropriate for treatment of persons under criminal charge.

competency restoration and assessment services" and that there was "still substantial probability that she may be restored to competency within the foreseeable future." Accordingly, they requested another restoration order pursuant to Code § 19.2-169.2 so that Bartosch could receive further treatment. On July 10, 2018, after Bartosch had received more than a year of treatment at Central State, the psychologists treating Bartosch found that she was competent to stand trial. They specifically found that Bartosch "had an adequate understanding of factual information regarding court" and that "she demonstrated a rational understanding of court and the ability to work with counsel during her interview[.]" Therefore, they found "to a reasonable degree of professional certainty that the defendant currently possesses a rational and factual understanding of court and the ability to assist counsel in her own defense," and concluded that "Ms. Bartosch is competent to stand trial." She was charged with first-degree murder, aggravated malicious wounding, and arson of an occupied dwelling.

After Bartosch was found competent to stand trial, Bartosch requested an evaluation of her sanity at the time of the offense. Dr. Jeremy Walden, a licensed clinical psychologist, issued a report in which he noted that "it appears Ms. Bartosch's reasoning and judgment was impaired during the period of the alleged offenses." Dr. Walden opined that Bartosch suffered from "a mental disease or defect that would have impaired her ability to appreciate the nature and consequences of her actions" at the time of the offense. Dr. Walden also stated that "dissociative processes impacted her ability to appreciate the nature and consequences of her offense."

Consequently, on January 24, 2019, counsel for Bartosch filed a "Notice of Intention to Assert Insanity Defense" at trial. The notice stated that "pursuant to [Code §] 19.2-168, the Defendant gives notice of her intent to present evidence of insanity at the time of the offense." The trial court subsequently appointed Dr. Stanton Samenow, a licensed clinical psychologist, to conduct an independent evaluation of Bartosch's sanity at the time of the offense. Dr. Samenow

found that Bartosch was sane at the time of the offense, and stated, "Ms. Bartosch knew right from wrong, understood the nature, character, and consequences of her actions, and did not suffer from an irresistible impulse." Dr. Samenow wrote, "By self-report, Ms. Bartosch continues to suffer from amnesia more than two years after the alleged offense," but noted both that "[t]he evidence is inconsistent as to what the extent of the amnesia is" and that Bartosch "maintains that she is recovering more memories as time passes."

After Dr. Walden and Dr. Samenow completed their evaluations of Bartosch's sanity at the time of the offense and reached differing conclusions, Bartosch entered into a written plea agreement with the Commonwealth on September 6, 2019. Pursuant to the plea agreement, Bartosch agreed to enter a guilty plea pursuant to *Alford* to the charge of first-degree murder, in exchange for which the Commonwealth would *nolle prosequi* the remaining charges of aggravated malicious wounding and arson of an occupied dwelling. The plea agreement provided that Bartosch would be sentenced to a period of active incarceration within the applicable sentencing guidelines, and it also provided that Bartosch would waive the right to seek any alternative sentencing programs, would waive her rights to trial by jury, and would waive her Fourth Amendment rights during the pendency of the case. The plea agreement also specifically stated, "I agree to waive my right to withdraw my plea of guilty under Virginia Code § 19.2-296."

The trial court held a plea hearing during which the court conducted a thorough colloquy with Bartosch and reviewed the terms of the plea agreement with Bartosch at length. The trial court confirmed that Bartosch understood the plea agreement, that she voluntarily, knowingly, and intelligently entered the plea, and that she understood both the nature of the first-degree murder charge and the consequences of her plea. At one point during the plea hearing, the trial court read over the provision concerning the sentencing agreement, and Bartosch asked her counsel for clarification when she did not understand the trial court's question. Bartosch also conferred with

her counsel when she did not understand the trial judge's statement that she would be ineligible for parole. The trial court then specifically reviewed the waiver provision, stating, "You waive your right to withdraw this guilty plea."

After reading over those terms, the trial judge asked Bartosch if the two-page written plea agreement was the full and complete agreement between Bartosch and the Commonwealth. Bartosch replied, "Yes, sir." Bartosch said that she understood all of the trial court's questions, that she had answered them truthfully, and that she had no questions for the trial court. Bartosch stated to the trial court that she had no mental or physical conditions that affected her ability to understand the proceedings and the consequences of her plea. Consequently, the trial court accepted the plea. The trial court found that Bartosch's "plea of guilty, pursuant to *Alford*, ha[d] been made freely, intelligently, and voluntarily" and that Bartosch "underst[oo]d the nature of the charge against [her] and the consequences of [her] plea." The trial court convicted Bartosch of first-degree murder, and, pursuant to the plea agreement, the indictments for aggravated malicious wounding and arson of an occupied dwelling were *nolle prosequied*.

The matter was set for sentencing for October 22, 2020. However, Bartosch filed a motion to withdraw her plea on October 15, 2020. In support of the motion, Bartosch argued that a report by Dr. Stephen Xenakis justified the withdrawal. In his report, Dr. Xenakis wrote:

> I can confidently render a professional opinion, based on the evidence available, that Ms. Bartosch suffered a psychotic-like snap at the time of the incident for which she has pled and that she had no appreciation of her circumstances or of the rightfulness or wrongfulness of her acts. While she is currently able to understand her case, she cannot assist her counsel with any recollection of the events. At the time of her plea, however she lacked the competence to understand her case and the ramifications of her plea.

The motion stated that Bartosch "relied, in good faith, on advice of counsel" in entering the plea but said that Dr. Xenakis's report "confirms the indicators of incompetence at the times of the incident

and of the plea." The Commonwealth opposed the motion, arguing that Bartosch waived her right to withdraw her guilty plea as part of the plea agreement.

The trial court heard the motion to withdraw, including hearing direct testimony from Dr. Xenakis, on October 22, 2020. Dr. Xenakis testified that he did not believe that Bartosch "understood the charges against her because she did not have any memory or recall of the facts or events, and, therefore, could not effectively assist her counsel." Dr. Xenakis confirmed that it was his professional opinion that Bartosch was able to understand her case but unable to assist her counsel with any recollection of the events, and, therefore, it was his opinion that Bartosch was incompetent at the time of the incident and at the time of the plea.

The trial court noted that Code § 19.2-169.1(E) provides that the fact that a defendant claims to be unable to remember an offense does not bar a finding of competency to stand trial if the defendant understands the charges and can assist in his or her own defense. The trial court also noted that Bartosch entered into the plea agreement with the Commonwealth *after* her competency had been restored following more than a year of inpatient treatment at Central State. The trial court emphasized that the plea agreement "carried consideration to Ms. Bartosch" and that the Commonwealth had already upheld its end of the bargain by having the two additional indictments (both of which exposed Bartosch to possible life sentences) *nolle prosequied* and by capping the recommended period of active incarceration. In addition, the trial court found "there is nothing new here, there was already in hand an awareness of a qualified opinion with respect to sanity at the time of the offense" and emphasized that there was no "fraud, coercion, or undue influence that induced the decision" to enter into the plea agreement. The trial court found nothing to discredit the prior determination that Bartosch was competent at the time she entered into the plea agreement. The trial judge made a specific factual finding that "everything else I have stated here today in rendering

- 6 -

what strikes the Court, from what I have read and what I have heard, indicates that Ms. Bartosch did not lack competency at the time that she entered into this plea." The trial judge stated:

> It sounds like there was a reasoned decision here that they could try the case, and what they would be risking if they did so, things that would be exposed that she chose not to have exposed at that time, could . . . be unsuccessful, versus what was in the binding agreement, which was also addressed in the plea colloquy, nol-prossing of two serious charges and capping the sentence for the third. And, of course, that goes to both the prejudice and contractual arguments[.]

As a result, the trial court found that Bartosch was bound by the plea agreement's express provision that Bartosch "agree[d] to waive [her] right to withdraw [her] plea of guilty under Virginia Code § 19.2-296." The trial court ruled that "the waiver clause along with the rest of the [plea] agreement is binding." The trial judge therefore denied the motion to withdraw the guilty plea and sentenced Bartosch in accordance with the plea agreement. This appeal followed.

## II. ANALYSIS

This Court granted Bartosch an appeal on the following assignment of error: "The circuit court erred in denying Petitioner's motion to withdraw *Alford* plea." On appeal, Bartosch argues that the trial court erred in not allowing her to withdraw her plea because the motion to withdraw was made in good faith, because she presented a reasonable basis for contesting her guilt, and because there would have been no prejudice to the Commonwealth sufficient to bar withdrawal of the plea. The Commonwealth argues in response that Bartosch expressly waived her right to move to withdraw her *Alford* guilty plea under Code § 19.2-296, and, in the alternative, the Commonwealth contends that Bartosch failed to meet the applicable standard for withdrawal of a guilty plea prior to sentencing.

## A. Standard of Review

"The decision whether to allow a defendant to withdraw his plea 'rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case.'"

*Spencer v. Commonwealth*, 68 Va. App. 183, 186 (2017) (quoting *Parris v. Commonwealth*, 189 Va. 321, 324 (1949)). On appeal, the trial court's ruling can be reversed "only upon 'clear evidence that [the decision] was not judicially sound . . . .'" *Coleman v. Commonwealth*, 51 Va. App. 284, 289 (2008) (alteration in original) (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1998)).

B.  Whether Bartosch Should Have Been Allowed to Withdraw her *Alford* Guilty Plea

Code § 19.2-296 provides that a defendant ordinarily may move to withdraw a plea of guilty before a sentence is imposed. However, "Code § 19.2-296 applies to the withdrawal of a guilty *plea* and is silent on its impact when the guilty plea is part of a plea agreement." *Thomason v. Commonwealth*, 69 Va. App. 89, 95 (2018) (emphasis in original). In the specific context of plea *agreements*, the Supreme Court of Virginia has held that "general principles of contract law apply to plea agreements[.]" *Wright v. Commonwealth*, 275 Va. 77, 79 (2008). Moreover, the Supreme Court has also stated that "[i]n general, a party may contractually waive 'any right conferred by law or contract.'" *Radiance Capital Receivables Fourteen, LLC v. Foster*, 298 Va. 14, 19 (2019) (quoting *Gordonsville Energy, L.P. v. Va. Elec. & Power Co.*, 257 Va. 344, 356 (1999)). "If the party being charged with relinquishment of a right had knowledge of the right and intended to waive it, the waiver will be enforced." *Gordonsville Energy*, 257 Va. at 356. Consistent with that precedent, this Court held in *Griffin v. Commonwealth*, 65 Va. App. 714, 718 (2016), that "[i]rrespective of whether Code § 19.2-296 confers a statutory 'right' or simply describes a procedural milestone, a defendant can expressly waive its provisions." Thus, while Code § 19.2-296 usually permits a defendant to move to withdraw a guilty plea before a sentence is imposed, the defendant can contractually relinquish the opportunity to do so by virtue of an express waiver provision in a valid and binding plea agreement. *See id.*; *see also Thomason*, 69 Va. App. at 97-98 ("[A] knowing, voluntary, and intelligently entered into plea agreement involves concessions

- 8 -

and negotiation by both parties, and the resulting contract binds both parties." (citing *Wright*, 275 Va. at 82 n.5 (listing cases from multiple jurisdictions applying contract principles to plea agreements))).

In *Griffin*, this Court held that the defendant could not move to withdraw his guilty pleas under Code § 19.2-296 where he signed a written plea agreement "that expressly waived any right to withdraw his plea once it was accepted by the trial court." 65 Va. App. at 719. We noted that the trial court engaged in an "extensive colloquy" during which it "reviewed the agreement terms with Griffin in detail." *Id.* Griffin responded affirmatively to the trial court's questions, confirmed that he had read and understood the agreement, and stated that he had entered his guilty pleas freely and voluntarily. *Id.* The trial court questioned Griffin about the provision waiving his right to withdraw his pleas, Griffin then specifically confirmed that he understood the waiver provision, and the trial court ruled that Griffin knowingly and voluntarily entered his guilty pleas. *Id.* Consequently, this Court affirmed the trial court's denial of Griffin's motion to withdraw his pleas, given that the plain language of the plea agreement and "the transcript of the plea colloquy demonstrate[d] that Griffin expressly agreed to waive any ability to withdraw his guilty pleas." *Id.* [3]

As we stated in *Griffin*, "[a]n express waiver is a 'voluntary action or inaction with intent to surrender a right *in esse* with knowledge of the facts and circumstances which gave birth to the right.'" *Id.* at 718-19 (quoting *Emps. Commercial Union Ins. Co. v. Great Am. Ins. Co.*, 214 Va.

---

[3] In *Thomason*, 69 Va. App. at 95, this Court recognized that Thomason's written plea agreement "contained an express waiver of his right to withdraw his pleas," but also noted "that Thomason was not questioned about his understanding of the waiver provision during the plea colloquy." Without addressing whether *Griffin* applies in such a situation, the Court in *Thomason* ultimately held that the trial court did not err because Thomason had failed to "establish[] a reasonable defense as contemplated by *Parris*, *Justus*[*v. Commonwealth*, 274 Va. 143 (2007)], and their progeny." *Id.* at 96. Because the Court in *Thomason* did not render an opinion on the applicability of *Griffin* to Thomason, *see id.* at 95, the decision in *Thomason* does not control our review in this case of the trial court's ruling that Bartosch expressly waived the opportunity to withdraw her guilty plea under Code § 19.2-296.

410, 412 (1973)). Furthermore, "[e]xpress waivers can be made through a writing, an oral statement, or a combination of both." *Id.* at 719. In the present case, Bartosch signed a two-page plea agreement, and on the first page, it states, "I agree to waive my right to withdraw my plea of guilty under Virginia Code § 19.2-296." As in *Griffin*, the trial judge engaged in an extensive colloquy with Bartosch during which the trial judge reviewed the terms of the plea agreement and confirmed Bartosch's understanding of those terms.[4] *See id.* at 718-19. The record demonstrates that the trial court read over the terms of the agreement in open court with Bartosch, including specifically mentioning the waiver provision by stating, "You waive your right to withdraw this guilty plea." At the conclusion of the colloquy, Bartosch confirmed that she understood the terms of the plea agreement and that she did not have any questions for the court – which takes on additional significance given that Bartosch *did* ask questions at other times during the colloquy to clarify the terms of the agreement or the trial judge's question at the time. In addition, Bartosch stated to the trial judge that she had no mental or physical conditions that affected her ability to understand the proceedings and the consequences of her plea, and she responded to the court with appropriate answers to all of the trial judge's questions.

In addition, in contrast to *Griffin*, in which the trial court "only expressly ruled that Griffin knowingly and voluntarily entered his guilty pleas (not that he waived his right to withdraw them)," *see id.* at 719, the trial court in this case expressly ruled that "the waiver clause along with the rest of

---

[4] Bartosch does not challenge the validity of her plea. Pursuant to *Boykin v. Alabama*, 395 U.S. 238 (1969), and its progeny, the trial court had an affirmative obligation to determine that Bartosch voluntarily and intelligently entered her guilty plea before the trial court could accept the plea. *See also Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970))). Bartosch does not argue on appeal that the trial court erred under *Boykin* when it accepted her guilty plea. In short, this case does not involve a challenge to the validity of the plea itself, but solely a challenge to the trial court's ruling that the plea could not be withdrawn under Code § 19.2-296. Thus, we are limited to deciding whether the trial court abused its discretion in denying the motion to withdraw under Code § 19.2-296.

the agreement is binding." In this case, the plain language of the plea agreement and the transcript of the plea colloquy demonstrate that Bartosch expressly agreed that she would not move to withdraw her guilty plea once it was accepted by the trial court. Because Bartosch expressly agreed in the plea agreement that she would not move to withdraw her plea under Code § 19.2-296 and confirmed through the plea colloquy her understanding of that agreement, we certainly cannot say that the trial court abused its discretion in denying Bartosch's motion to withdraw her guilty plea.[5]

### III. CONCLUSION

In short, we hold that the trial court did not err in denying Bartosch's motion to withdraw her *Alford* guilty plea. Bartosch entered into a valid plea agreement in which she expressly agreed that she would not move to withdraw her plea once it was accepted by the trial court. While Code § 19.2-296 ordinarily permits a defendant to move to withdraw a guilty plea prior to sentencing, the defendant can expressly bargain away the opportunity to do so as part of a valid and binding plea agreement. This plea agreement here resulted in two felonies with which Bartosch was charged

---

[5] In addition to ruling that Bartosch expressly waived the opportunity to move to withdraw her plea under Code § 19.2-296, the trial court also apparently ruled that the motion to withdraw was not made in good faith. "[A] defendant who wishes to withdraw h[er] guilty plea must do more than tender a defense." *Pritchett v. Commonwealth*, 61 Va. App. 777, 788 (2013). The movant must establish that "the plea of guilty was submitted in good faith under an honest mistake of material fact or facts, or . . . it was induced by fraud, coercion or undue influence and would not otherwise have been made." *DeLuca v. Commonwealth*, 73 Va. App. 567, 579 (2021) (alteration in original) (quoting *Parris*, 189 Va. at 324). "A trial court's finding on the issue of 'good faith' is a finding fact" that we can overturn only if it is "plainly wrong or without evidence to support it." *Branch v. Commonwealth*, 60 Va. App. 540, 547-48 (2012). At the hearing on the motion to withdraw, the trial court found "there is nothing new here, there was already in hand an awareness of a qualified opinion with respect to sanity at the time of the offense" – and also found that there was no "fraud, coercion, or undue influence that induced the decision" to enter into the plea agreement. In order to decide this case on its best and narrowest grounds, however, we do not need to reach the trial court's ruling that the motion to withdraw was not made in good faith because we agree with the trial court's ruling that Bartosch had expressly committed in the plea agreement not to file that motion to withdraw the plea in the first place. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020).

being *nolle prosequied* and also resulted in a limit being placed on the period of active incarceration for her first-degree murder conviction.  In this case, the plain language of the plea agreement between Bartosch and the Commonwealth and the transcript of the plea colloquy demonstrate that Bartosch expressly agreed that she would not move to withdraw her plea under Code § 19.2-296.  Thus, we cannot say that the trial court abused its discretion in denying Bartosch's motion to withdraw her guilty plea, given its ruling that Bartosch contractually relinquished the ability to withdraw the plea under Code § 19.2-296.  Therefore, for these reasons, we affirm the judgment of the trial court.

*Affirmed.*